ANDERSON, Justice,
for the Court:
This is an appeal from a decree of the Chancery Court of Harrison County permanently enjoining the defendant from operating an establishment in Biloxi known as the Little Apple. Finding no error in the conduct of the trial or the chancellor’s decree, we affirm.
The Little Apple is a lounge owned by Hattie Mattina; the area surrounding it is principally residential. Though it is authorized to dispense beer, neither the Little Apple nor its proprietors have an ABC permit for the sale of liquor.
Appellant Vireece Proby has leased the Little Apple since January 17, 1983, and has operated it on behalf of Mrs. Mattina since. For a long time (including the entire period of Proby’s management) the Little Apple has been the focus of discontent in the neighborhood. Various illegal and obnoxious activities continually occurred in and near the lounge. There were frequent incidents involving fights, aggravated assaults, stabbings, gambling, shootings, and other disorderly conduct. Police officers testified that they had made hundreds of visits to the Little Apple over a two-year period and that on most of those visits, they had observed the use of marijuana in and around the lounge. Indeed, during an undercover investigation one officer repeatedly purchased narcotics there himself. On one such occasion, the sellers “laid the stuff on the table in the crowded bar and told [him] to take [his] pick.” Finally, an ABC raid in May 1983 uncovered 59 bottles of liquor, resulting in Proby’s conviction for illegal possession of liquor.
*794 Biloxi authorities filed a bill asking for an injunction against Proby. After hearing the evidence, the chancellor understandably had little difficulty concluding that the Little Apple was a public nuisance. He issued a permanent injunction against its operation, and required Proby to post a bond in the amount of $20,000 to insure compliance.
On appeal, Proby adduces four assignments of error. The first need not detain us. Proby asserts that an injunction was unwarranted because adequate remedies existed at law. The record shows, however, that the continual intervention of the Biloxi Police Department did not suffice to curtail the various obnoxious activities at the lounge. Under the circumstances, the city had little choice but to seek an injunction.
The second assignment warrants more serious attention. At trial, the police department’s custodian of records introduced into evidence a fairly fat folder of police documents pertaining to dozens of violations and disorderly incidents at the Little Apple. Some of these resulted in convictions; some did not. Proby argues that it was improper for the chancellor to consider all of this evidence. His argument is based on Mississippi Code Annotated, Section 95-3-13 (1972), the pertinent part of which reads:
In such action [for the abatement of a public nuisance] evidence of the general reputation of a place, or an admission or finding of guilt of any person under the criminal laws against prostitution, lewdness or assignation at any such place shall be admissible for the purpose of proving the existence of said nuisance and shall be prima facie evidence of such nuisance and of knowledge of and acquiescence in participation therein of the person or persons charged with maintaining said nuisance.... of such nuisance and of knowledge of and acquiescence in participation therein of the person or persons charged with maintaining said nuisance ....
Proby argues that the statute compels this Court to apply the maxim “inclusio unius est exclusio alteráis” and to hold that the chancellor could have considered such evidence, and only such evidence, as pertained to incidents resulting in convictions.
We disagree. In the first place, § 95-3-13 is directed at a specific type of nuisance — to wit, the house of prostitution. Prostitution was one of the few vices not practiced in and around the Little Apple.
More to the point, the city’s petition was not based on any statute, but on the common law of nuisance. Proby’s argument can succeed only if our various statutes about nuisance have totally displaced the common law in this area. We have never so held, and there are sound reasons for not doing so now.
It appears to us that the appellant has confused several distinct common-law rules of evidence. Our common-law rule is that evidence of specific instances of conduct to impeach a witness is inadmissible, except when the conduct resulted in a criminal conviction. E.g. Haralson v. State, 314 So.2d 722, 723 (Miss.1975); McDonald v. State, 285 So.2d 177, 179-80 (Miss.1973); Allison v. State, 274 So.2d 678, 682 (Miss.1973). But in the present case, of course, the incidents were not recounted for the purpose of impeaching any witness, but for establishing the character of the establishment. Thus, the applicable common law rules are not those concerning impeachment, but rather those governing character and reputation evidence.
The rule that character cannot be shown by evidence of specific incidents or crimes not resulting in convictions arises most often in criminal cases. There, such evidence is generally excluded on grounds of relevance, since it is generally adduced to show “that the one having such a character acted in conformity on a particular occasion.” J. Brand and J. Palmer, “Relevancy and its Limits,” 48 Miss. L.J. 935-955 (1977). Such analysis is of little use in the present case where there is no question of how anyone acted on a particular occasion; rather, the issue is precisely what the character of the establishment is.
*795 It is instructive that in civil cases, where the character of a party is in issue, Mississippi has always allowed specific instances to establish reputation even though the incidents cited may be crimes. Perhaps the closest thing to the present case in Mississippi civil actions is the use of such evidence in cases of defamation. This is generally permitted because in such cases the character and reputation of the party will usually be an issue. Thus, when a plaintiff sued claiming to be defamed for being described as a bad credit risk, the defendants were allowed to introduce the credit report on which that assessment was based; this report presumably contained specific instances of the plaintiffs dereliction. Miley v. Foster, 221 Miss. 106, 117, 90 So.2d 172, 175 (1956). In Tipps Tool Co. v. Holifield, 218 Miss. 670, 67 So.2d 609 (1953), a plaintiff sued for slander after being called a thief. The defendant was allowed to introduce evidence that on numerous occasions, tools had been unaccountably missing from areas in which the plaintiff had worked. 218 Miss, at 679-80, 67 So.2d at 615.
It would seem that a similar rule should be applied in proceedings to abate an establishment as a public nuisance. Obviously, the character of the establishment is the whole point of such a proceeding. Moreover, we have implicitly applied such a rule in other nuisance cases. In Green v. State, ex. rel. Chatham, 212 Miss. 846, 56 So.2d 12, (1952) the state brought suit to have an establishment enjoined as a nuisance. The complaint alleged, and testimony showed, a consistent pattern of incidents involving loud noise, profanity, public urination, and indecent exposure. The state noted in its complaint that it was basing its complaint on the common law of nuisance rather than on MCA § 1060 (1942); an action brought under that section would have been governed by the evi-dentiary provisions of § 1066, which were the same as those in § 95-3-13 in the present code. This Court held the establishment could be enjoined as a nuisance under these circumstances, thereby implicitly holding that the common law had not been preempted by our statutory scheme. There was no suggestion that the use of specific incidents of disorderly conduct was improper in such an action.
Such a rule is also dictated by common sense. As stated above, in an action to abate a public nuisance, the character of the establishment is of the very essence of the proceeding. To hold that the petitioners may show only such evidence as is enumerated in the statute would deprive local authorities of the use of the very facts most relevant to the question of nuisance. We cannot believe that the legislature intended such a result. Rather, we believe that §§ 95-3-1, et seq. (including § 95-3-13) were meant to supplement rather than replace the common-law rules of evidence.
Proby asserts that the bond imposed by the chancellor was excessive, and was designed to put him out of business. Perhaps that was his intent. If so, we cannot blame him. The entire point of this proceeding was to put Proby out of the tavern business, and the overwhelming evidence of the Little Apple’s character showed that he deserved no better fate. Proby cannot object to a remedy that puts him out of business when there was a reasonable finding that his business itself constituted the nuisance. Foreman v. State, 209 Miss. 331, 46 So.2d 794 (1950).
Lastly, Proby argues that the chancellor’s finding of a nuisance was contrary to the overwhelming weight of the evidence. Such an assertion leaves this Court stunned. In view of the record before us, we can only say that the Little Apple was a public nuisance if we ever heard of one. Biloxi will be well rid of it.
The chancellor acted rightly in enjoining it, and we affirm his decree.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, and GRIFFIN, JJ., concur.